IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ALAN WOODRUFF, TERRY MULCAHY,**
**CRAIG HARRIS, DONALD HILLIS,**
**MICHAEL MUDD, and**
**GREEN PARTY OF NEW MEXICO,**

                    **Plaintiffs,**

**vs.**                                                          **Civ. No.  10-686 JH/KBM**

**MARY HERRERA, Individually and in her**
**capacity as New Mexico Secretary of State,**
**DON FRANCISCO TRUJILLO, Individually**
**and in his official capacity as Director of the**
**Bureau of Elections in the office of the Secretary**
**of State, and GARY KING, in his official**
**capacity as Attorney General for the State of**
**New Mexico,**

                    **Defendants.**

## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on two motions: (1) *Defendants' Motion to Dismiss* [Doc. No.

7], and (2) *Defendant Gary King's Motion to Dismiss* [Doc. No. 10].  The Court has reviewed the

former motion, as well as the Plaintiffs' response, Defendants' reply, the Complaint, the applicable

provisions of the New Mexico Election Code, and relevant legal authorities.  The Court concludes

that the Defendants' motion to dismiss should be granted.  As a result, Defendant Gary King's

motion is moot and will be denied as such.

## LEGAL STANDARD

        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949.  Although the complaint need not recite "detailed factual allegations, . . . the factual allegations must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quotation omitted).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (2009).  The Court will accept as true all well-pleaded facts and " 'construe all reasonable allegations in the light most favorable to the plaintiff.'" *Sunrise Valley, LLC v. Kempthorne*, 528 F.3d 1251, 1254 (10th Cir. 2008).  However, the Court must distinguish well-pleaded facts from conclusory statements and legal conclusions.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

## **FACTS ALLEGED IN THE COMPLAINT**

Plaintiffs' Complaint contains a great number of conclusory allegations, as distinguished from well-plead facts.  Leaving the conclusions aside, the facts as alleged by the Plaintiffs are as follows.  In 2010, Plaintiff Alan Woodruff was the nominee of the Green Party of New Mexico for the office of United States Representative, while Plaintiff Terry Mulcahy was the Green Party's nominee for the office of Secretary of State.  Complaint at ¶¶ 3-4.  On June 22, 2010—the date for filing qualifying papers for minor party candidate petitions in 2010—Woodruff and Mulcahy attempted to file their qualifying papers for the 2010 general election, but Defendant Don Francisco Trujillo, Director of the Bureau of Elections within the Secretary of State's office, refused to accept

them. *Id.* at ¶¶ 12-13, 23-24. Trujillo refused on the basis that the Green Party was not a qualified

party in New Mexico. *Id.* at ¶ 14. Plaintiffs also allege that Woodruff attempted to file sufficient

petition signatures to qualify[1] the Green Party, *id.* at ¶ 18, though they do not allege when he did

so—a material omission as the Election Code contains deadlines for such filings. However,

Paragraph 17 of the Complaint, an incorrect legal conclusion, states that "[p]olitical parties may

'qualify' by filing appropriate petitions up to the filing date for minor party candidates." This

suggests that the Green Party may have attempted to file its qualifying petitions on June 22, 2010

as well. Next, Plaintiffs allege that Trujillo refused to accept qualifying petitions for the Green

Party, again without alleging when this occurred. *Id.* at ¶ 19. However, Plaintiffs allege that

Trujillo should have "accepted" Woodruff and Mulcahy's qualifying papers and then waited until

the Court ruled on claims in *Woodruff I*, *Woodruff II*, and *Reform Party* before taking action on

those papers. *Id.* at ¶ 16.[2] The New Mexico Election Code does not contain any provision

specifically authorizing the Secretary of State to refuse to accept candidate qualifying papers. *Id.*

at ¶ 20.

Plaintiffs further allege that the Secretary of State has conspired with her counsel, Scott

Fuqua (who is not a defendant in this case) to delay unspecified proceedings in U.S. district court

by "using, and exceeding, the maximum time permitted by judicial rules for filing pleadings,"

employing unspecified "procedural tactics," and "causing and/or permitting officials of the Office

---

[1] Although Plaintiffs do not address this in their Complaint, it is undisputed that the
Green Party did not receive the required number of votes in the two preceding general elections
required to maintain its status as a qualified political party.

[2] Plaintiffs do not allege the number of signatures the Election Code required for their
petitions, nor do they state the number of proper signatures on their petitions. Instead, they make
the conclusory statement that their petition signatures were "sufficient." Complaint at ¶ 18.

of the Secretary of State to provide false information in defense of provisions of the Election Code."
*Id*. at ¶ 44.  Plaintiffs do not allege what false information was provided, when it occurred, or to whom it was given.  Plaintiffs further allege that Defendant Gary King knew of and approved these actions.  *Id.* at ¶ 45.  They allege that Defendant Herrera has injured the Green Party by failing to comply with the provisions of the Election Code requiring her to notify the Green Party of its loss of qualified status, and continuing to identify the Green Party as "qualified" on the Secretary of State's website for the purpose of misleading the Green Party.  *Id*. at ¶ 52.  They do not allege that the Green Party was ever actually misled as to its status.  Plaintiffs further allege that it is improper for the Secretary of State to permit establishing a "straight party" voting option in New Mexico, *id*. at ¶ 54, a matter addressed in *Woodruff I*.  *See* Memorandum Opinions and Orders entered February 1, 2010 and September 22, 2010 in *Woodruff* I, 09cv449.  Plaintiffs make many other vague, conclusory and unspecified allegations against the Defendants.  *See, e.g., id.* at ¶¶ 56, 58, 60, and 62-63.  According to Plaintiffs, all of the foregoing acts have "impair[ed] free and open elections and interfer[ed] with the exercise of the voting franchise" of all registered voters in New Mexico. *Id*. at ¶¶ 65-68.  Plaintiffs ask the Court to certify a class of 1,000,000 registered voters in New Mexico to be represented by Plaintiffs Hillis, Harris and Mudd.  Id. at ¶¶ 66, 69, and 71.

## DISCUSSION

### I.   COUNT I

In Count I of their Complaint, Plaintiffs Woodruff, Mulcahy and Green Party of New Mexico contend that Defendants Herrera and Trujillo violated their constitutional rights by refusing to accept their candidate qualifying petitions for the general election ballot as well as the qualifying papers for the Green Party.  Their complaint states in conclusory fashion that Woodruff and Mulcahy have a statutory and constitutional right to file their petitions and to have them accepted by the Secretary

of State, and that the Defendants deprived them of that right without cause and without due process. Complaint at ¶¶ 21-22.

### A.   Relevant Provisions of the Election Code

The New Mexico Election Code, NMSA 1978, § 1-1-1 et seq., sets forth provisions by which both "major" and "minor" political parties may qualify to nominate candidates, as well as requirements for candidates of parties as well as independent candidates who wish to have their names placed on the ballot. Under the version of the statute in effect on June 22, 2010, the date the Green Party attempted to file its petition, in order to become a "qualified" political party in the state, a party must adopt rules and regulations providing for the organization and government of that party and file them with the secretary of state. *Id.* at § 1-7-2(A). At the same time, the party must also file with the secretary of state "a petition containing the hand-printed names, signatures, addresses of registration[3] and counties of residence of at least one-half of one percent of the total votes cast for the office of governor at the preceding general election who declare by their signatures on the petition that they are voters of New Mexico and that they desire the party to be a qualified political party in New Mexico." *Id.* Under § 1-7-4(A), these filings are due "within thirty days after its organization and no later than the first Tuesday in April before any election in which it is authorized to participate." In 2010, the first Tuesday in April before the general election was April 6, 2010.

Under the Election Code, a political party may also be disqualified. This occurs "if two successive general elections are held without at least one of the party's candidates on the ballot or if the total votes cast for the party's candidates for governor or president of the United States,

---

[3] Section 1-7-2 formerly required addresses of *residence* on petitions. However, on July 1, 2011, the statute was amended to require addresses of registration. The confusion regarding which address a petition signer is required to write down was discussed in *Woodruff I*.

provided that the party has a candidate seeking election to either of these offices, in a general election do not equal at least one-half of one percent of the total votes cast for the office of governor or president of the United States, as applicable." *Id*., § 1-7-2(C). In the event a party is disqualified, the statute also requires the Secretary of State to notify the party's chairman of the disqualified party by registered mail. *Id*. To requalify, the party must again comply with the petition procedures set forth in the Election Code. *Id*. at § 1-7-2(C).

There are also qualifying rules governing the candidates that minor political parties choose to put forward for nomination. If the minor party's rules require nomination by political convention, then the party's officials must certify the names of the nominees for office to the secretary of state. *Id*. at § 1-8-2(A). The names certified to the secretary of state must be filed 21 days after the primary election and be accompanied by a petition for each candidate containing a list of signatures and addresses of voters "totaling not less than one percent of the total number of votes cast at the last preceding general election for the office of governor or president of the United States, as the case may be: (1) in the state for statewide offices; and (2) in the district for offices other than statewide offices." *Id*. at § 1-8-2(B). A political party must be qualified under the Election Code in order to nominate candidates for office. *Id*. at § 1-1-9(B) and 1-8-1(B).

As previously discussed, it is undisputed that the Green Party did not receive the required number of votes in the 2006 and 2008 general elections required to remain a qualified political party under the Election Code. It is also undisputed that prior to June 22, 2010, Woodruff and others had filed three lawsuits challenging, *inter alia*, the Election Code's requirements for qualification of minor parties, procedures for disqualification of parties generally and the Green Party in particular, and the petition requirements for candidates from minor parties. Among the relief sought in *Woodruff I* was an injunction directing the Secretary of State to deem the Green Party to be

6

"qualified" under the Election Code and ordering her to place certain candidates on the ballot. *Woodruff I* and its member cases were pending on July 20, 2010, when Plaintiffs filed their complaint in *Woodruff III*.

### B.   Failure to State a Claim Based Upon Rejection of Qualifying Petitions

In essence, in Count I Plaintiffs assert that the Defendants violated their constitutional rights by enforcing the terms of the Election Code then in effect—specifically, Sections 1-7-2, 1-7-4, and 1-8-2 as discussed above.  On June 22, 2010, when Trujillo rejected the Woodruff and Mulcahy's candidate petitions (and assuming, for the sake of argument, that the Green Party offered its qualifying petition on the same date), some of the Plaintiffs had filed a lawsuit, *Woodruff I*, challenging the constitutionality of those portions of the Election Code under which their petitions were improper.  However, on that date there was no legal ruling from this or any other Court holding the law to be unconstitutional or directing the Secretary of State not to follow it.

In their motion to dismiss, Defendants argue that until a court rules otherwise or the Election Code's current provisions are satisfied, the Green Party is disqualified under the Election Code, and that under the facts as alleged in the Complaint, Trujillo's rejection of the petitions was proper. They argue that the Plaintiffs' legal challenges to the Election Code, to the extent that they were either unsuccessful or undecided as of June 22, 2010, placed no obligation on the Defendants to do anything other than follow the statute as written.  The Defendants assert that they had no obligation to regard the Green Party's qualification status to be in some sort of "limbo" due to the pending constitutional challenge.  The Court agrees.  Plaintiffs  have cited no authority that provides that the Defendants had a duty to accept the Green Party and candidate qualifying papers simply because there were pending lawsuits challenging the portions of the Election Code challenging qualification requirements for minor parties and their candidates.  Plaintiffs have cited no authority holding that

Defendants were required to assume that the Election Code's minor party and minor party candidate petition requirements were unconstitutional. And yet, they have alleged that Defendants violated their constitutional rights by failing to do so.

It appears that much of Plaintiffs' response relies upon their misunderstanding regarding the deadline for filing minor party qualifying papers. In Paragraph 17 of their Complaint, Plaintiffs assert a legal conclusion, and an incorrect one at that. They contend that "[P]olitical parties may 'qualify' by filing appropriate petitions up to the filing date for minor party candidates." As discussed above, qualifying petitions for political parties must be filed contemporaneously with the party's rules and regulations, and therefore they are due no later than the first Tuesday in April in the year of the election for which the party seeks to run candidates.[4] NMSA 1978, §§ 1-7-2(A), 1-7-4(A). In this case, that date was April 6, 2010, but both the Complaint and the Plaintiffs' response brief imply that the Green Party did not attempt to file its petitions until June 22, 2010. Similarly, Woodruff and Mulcahy's petitions to run as Green Party candidates were improper because, as Plaintiffs do not dispute, the Green Party was not qualified to nominate candidates under the Election Code. In light of the foregoing, Plaintiffs have failed to state a claim that Trujillo's rejection of their filings was in any way wrongful.

---

[4] In their response to the motion, Plaintiffs suggest that the Green Party was not required to file its rules and regulations with the Secretary of State on April 6, 2010, because it had previously filed those same rules and regulations, and they remained in the Secretary of State's possession. As a result, Plaintiffs conclude that the Green Party was not required to refile its rules and regulations, leaving it with no deadline to file its qualifying petitions. Thus, they contend that the Secretary of State erred when it concluded the Green Party had missed its filing deadline. Plaintiffs' argument, though fanciful, is without merit. There is no statutory provision within the Election Code that excuses a party that wishes to re-qualify from re-filing its rules and regulations. To the contrary, the statute simply and clearly states that any disqualified party that wishes to requalify in New Mexico must meet all filing requirements for political parties. NMSA 1978, § 1-7-2(E). There is no exception for rules and regulations, nor for qualifying petitions, which are due no later than the first Tuesday in April.

Despite the fact that this is how they pled Count I in their Complaint, Plaintiffs now attempt to redirect the focus of their claim.  In their response Plaintiffs contend that the "core" of their claim is that "Defendants have collectively conspired to deny Plaintiffs their constitutional rights by engaging in conduct that that [sic] will prevent the candidate and party plaintiffs from obtaining ballot access *regardless of how the court rules* (in case 1:09-cv-449) *regarding the constitutionality of the challenged provisions of the Election Code*."  Doc. No. 8 at 4 (emphasis in original).  While the precise scope of the alleged "conduct" is unclear, it appears to include Trujillo's act of refusing to accept Plaintiffs' minor party and candidate petitions on the ground that they did not satisfy the Election Code, as there is no provision in the statute that expressly authorizes the secretary of state to reject such proffered filings when they do not meet the statute's requirements.  They assert that "this action is based on Defendants [sic] efforts to deny Plaintiffs the opportunity to comply with the Election Code."  Doc. No. 8 at 3.  Plaintiffs do not allege how the Defendants denied them such an opportunity, other than by refusing to accept the filings as discussed above.  Again, the Court is at a loss to understand the nature of the Plaintiffs' claim.  The Green Party failed to meet the filing deadline of April 6, 2010, and therefore it remains disqualified, thereby rendering its candidates ineligible to run as members of the Green Party.  If the secretary of state were required to accept all candidate and party petitions regardless of whether they satisfied the requirements of the Election Code merely because there is no provision authorizing her to reject them, then those same requirements would be meaningless.  This is not the law, and to the extent that this is Plaintiffs' basis for their first cause of action for violation of constitutional rights, it fails to state a claim.

### C.   Judicial Estoppel Regarding Deadline for Qualifying Petitions

Plaintiffs acknowledge that April 6, 2010 was the deadline for filing the Green Party's qualification petitions, but they contend that the Court should apply the doctrine of judicial estoppel

to prevent the Defendants from arguing that the Green Party missed the deadline.  As grounds for their contention, Plaintiffs attach a portion of a transcript from a hearing in an unrelated case, in which counsel for the Secretary of State in that case, Scott Fuqua, suggested to a New Mexico state district court that minor parties have until 21 days after the primary election to file their qualifying papers.  Mr. Fuqua having made that statement in open court, Plaintiffs now wish to bind the Defendants to that statement.

"The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' "  *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  As the Supreme Court explained in *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808 (2001), the doctrine of judicial estoppel typically applies when, among other things, a "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id*. at 750, 121 S.Ct. 1808 (internal quotation marks omitted).  The Tenth Circuit has said that in considering whether to apply the doctrine of judicial estoppel, courts typically consider three factors:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (quotations, citations, and alterations omitted).

Here, Mr. Fuqua admits that he suggested to the state district court judge that minor political

10

parties could file their petitions until 21 days after the primary election—or in this case, until June 22, 2010—a prior position that is contrary to that which the Defendants are taking in this case, and one that is in clear opposition to the text of the statute.  Thus, the first element of judicial estoppel as outlined in *Eastman* is satisfied.  However, there is absolutely no evidence that the second and third elements of the doctrine of judicial estoppel have been met.  Plaintiffs have not shown that the state district court was persuaded by Mr. Fuqua in the other case.  Indeed, Plaintiffs have not demonstrated that the deadline for filing minor party qualifying petitions was even an issue to be decided by the state district court, much less that the Secretary of State persuaded the Court as to that position.  In addition, Plaintiffs have not demonstrated that the Defendants would gain an unfair advantage in this litigation if the Court did not estop the Defendants from arguing that the deadline for filing minor party qualifying petitions was April 6, 2010.  For example, the Green Party had relied upon Mr. Fuqua's statement in the other case in making its decision not to file its petitions until June 22, that might satisfy the third element under *Eastman*.  But that cannot be the case here, as the hearing in the state court case took place on April 15, 2010, nine days after the deadline had already passed.  Therefore, it would be impossible for the Green Party to demonstrate reliance on Mr. Fuqua's prior statement.

In short, Plaintiffs have failed to demonstrate that the judicial estoppel applies in this case. Accordingly, the Court will grant Defendants' motion and dismiss Count I of Plaintiffs' complaint for failure to state a claim.

## II.     COUNT II

In Count II of their Complaint, Plaintiffs purport to represent a class of all New Mexico voters in a claim of money damages against the Defendants.  As with Count I, the allegations

supporting Count II are vague and conclusory, and therefore they do not meet the standards set forth by the Supreme Court in *Twombly* and *Iqbal*.  Accordingly, the Court concludes that Plaintiffs have failed to state a claim in Count II because they have failed to allege facts showing that the Defendants violated Plaintiffs' right to be on the ballot, much less the rights of all New Mexico voters to vote for them.

The crux of Plaintiffs' claim in Count II appears to be that by denying the Green Party and its candidates a place on the general election ballot, the Defendants deprived the candidates not only of their right to run for office but also denied New Mexico voters of the opportunity to vote for those candidates.  However, the Complaint simply does not allege facts, if proven, that would entitle the Plaintiffs to relief.  As discussed in the previous section of this Memorandum Opinion and Order, Plaintiffs have not alleged actionable conduct by the Defendants that deprived them of their right to be on the 2010 general election ballot.  Thus, the Plaintiffs have not alleged sufficient facts to show that any voter was harmed by being wrongfully deprived of the opportunity to vote for either Woodruff or Mulcahy.  Accordingly, Count II will be dismissed.

**IT IS THEREFORE ORDERED** that (1) *Defendants' Motion to Dismiss* [Doc. No. 7] is GRANTED, and both of Plaintiffs' claims will be **DISMISSED**.

**IT IS FURTHER ORDERED** that (2) *Defendant Gary King's Motion to Dismiss* [Doc. No. 10] is **DENIED AS MOOT**.

**UNITED STATES DISTRICT JUDGE**